UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LUIS GUSTAVO RODRIGUES SILVA,<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN,[1] Secretary of the United States Department of Homeland Security, in his official capacity; and JOSEPH B. EDLOW, Director of United States Citizenship and Immigration Services, in his official capacity,<br><br>Defendants. | * * * * * * * * * * * * * * * | Civil Action No. 1:25-cv-13692-ADB |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Luis Gustavo Rodrigues Silva[2] ("Plaintiff"), a Brazilian national seeking asylum in the United States, brings this action for declaratory and injunctive relief against Secretary of Homeland Security Markwayne Mullin and Director of United States Citizenship and Immigration Services ("USCIS") Joseph B. Edlow (collectively, "Defendants"). [ECF No. 1 ("Compl.")]. Plaintiff seeks, inter alia, an injunction requiring the government to reinstate his affirmative asylum application and a declaration that USCIS's dismissal of his application violated the Administrative Procedure Act ("APA") and the Due Process Clause of the Fifth

---

[1] Former Secretary of Homeland Security Kristi Noem is named in the complaint. [ECF No. 1]. Pursuant to Federal Rule of Civil Procedure 25(d), current Secretary of Homeland Security Markwayne Mullin was automatically substituted as a Defendant upon former Secretary Noem's departure.
[2] The complaint and Plaintiff's filings refer to Plaintiff at different points as both "Luis Gustavo Rodrigues Silva" and "Luis Gustavo Silva Rodrigues."

Amendment. [Id.]. Before the Court is Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [ECF No. 10]. For the following reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

### A. Legal Background

Foreign nationals who suffer from "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion" may seek asylum in the United States. 8 U.S.C. §§ 1101(42), 1158. The process for seeking asylum varies greatly depending on the asylum-seeker's status within the U.S. immigration system.

First, if an individual is "physically present in the United States" and the government has not initiated removal proceedings against him by filing a Notice to Appear with an immigration court, he may affirmatively apply for asylum by submitting a Form I-589 to USCIS. 8 C.F.R. § 208.2(a). Under this route, a USCIS asylum officer adjudicates the asylum-seeker's application through a non-adversarial interview process. 8 C.F.R. § 208.9. Second, if the government has initiated removal proceedings against an individual by issuing a Notice to Appear, then the immigration judge overseeing the removal proceedings has exclusive jurisdiction over any asylum claims, which the asylum-seeker must raise as a defense to removal rather than through an affirmative application. 8 C.F.R. § 208.2(b). The government may allow an individual in either of these two scenarios to remain free while his or her asylum application is evaluated. 8 U.S.C. § 1226(a). In addition, individuals seeking asylum through these routes may obtain employment authorization in the United States under certain circumstances. 8 C.F.R. § 208.7.

For individuals subject to expedited removal proceedings, the process of seeking asylum looks very different. Under 8 U.S.C. § 1225, the government may pursue expedited removal against certain individuals—including those who are apprehended at or near the border—by issuing a Form I-860, Notice and Order of Expedited Removal. 8 C.F.R. § 235.3(b). If a person in these proceedings wishes to pursue an asylum claim, he must first sit for an interview at which an immigration officer determines whether he has a "credible fear of persecution." 8 U.S.C. § 1225. If his fears of persecution are deemed credible by the immigration officer, he is placed in ordinary removal proceedings, where he then must persuade the immigration judge to grant his asylum claim. Id. While this process proceeds, a person in expedited removal proceedings is subject to mandatory detention, even if he is placed in ordinary removal proceedings after being found to have a credible fear of persecution. 8 U.S.C. § 1225(b)(1)(B)(ii).

### B. Factual Background

The following facts are drawn from the complaint. For purposes of this motion, the court "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor." Lawrence Gen. Hosp. v. Cont'l Cas. Co., 90 F.4th 593, 598 (1st Cir. 2024) (quoting Lanza v. Fin. Indus. Regul. Auth., 953 F.3d 159, 162 (1st Cir. 2020)).

Plaintiff is a Brazilian citizen who entered the United States without inspection on August 25, 2022. [Compl. ¶¶ 6–7]. After entering the country, he was initially apprehended by Customs and Border Protection. Id. On September 14, 2022, the Department of Homeland Security ("DHS") issued a "Notice of Custody Determination" which stated that Plaintiff was being released from custody "[p]ursuant to the authority contained in section 236 of the

Immigration and Nationality Act," a section codified at 8 U.S.C. § 1226. [ECF No. 4-1 at 1–2].[3] The same day, Plaintiff received an "Interim Notice Authorizing Parole," which stated that he had been paroled pursuant to 8 U.S.C. § 1182. [Id. at 3–4]. Plaintiff never received a Form I-860 commencing expedited removal proceedings, "either at the time of entry or subsequently." [Compl. ¶ 10].

After being released from custody, Plaintiff took up residence in the United States without ever having received a Notice to Appear in immigration court. [Id. ¶ 8]. On May 30, 2023, he filed an affirmative asylum application with USCIS by submitting a Form I-589, which was accepted by USCIS. [Id. ¶¶ 8, 18]. During this period, Plaintiff did not believe, and was not informed, that he was in expedited removal proceedings. [Id. ¶ 18]. Over two years later, on October 28, 2025, USCIS issued a notice of dismissal of Plaintiff's asylum application. [Id. ¶ 9]. The dismissal stated, as its sole basis, that USCIS lacked jurisdiction to entertain the application because Plaintiff was in expedited removal proceedings. [Id.].

### C. Procedural Background

Plaintiff filed his complaint on December 5, 2025, [Compl.], asserting that Defendants' dismissal of his affirmative asylum application was arbitrary and capricious in violation of the

[3] Plaintiff submitted this Notice of Custody Determination, [ECF No. 4-1 at 1–2], as an attachment to the memorandum, [ECF No. 4], that he filed in support of his complaint 18 days after he filed the complaint and before Defendants filed their motion to dismiss, [ECF No. 10]. The Court construes the memorandum and the attachments thereto as an amendment to Plaintiff's complaint under Federal Rule of Civil Procedure 15(a)(1) and therefore considers them in connection with Defendants' motion. Moreover, Defendants appear to concede the authenticity of the Notice of Custody Determination in their motion to dismiss, see [ECF No. 11 at 5–6], rendering it subject to consideration at this stage. See Dubliner, Inc. v. E. Coast Tavern Grp., Inc., 706 F. Supp. 3d 181, 187 (D. Mass. 2023); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

APA, and that the denial further violated the Due Process Clause. On March 13, 2026, Defendants filed the present motion requesting dismissal of all claims, arguing that (1) the Court lacks jurisdiction over Plaintiff's claims, and (2) Plaintiff's complaint fails to state a claim. [ECF No. 10]. Plaintiff filed a response on March 27, 2026. [ECF No. 12].

## II. STANDARD OF REVIEW

Because Defendants' motion raises arguments for dismissal on both jurisdictional and merits grounds, the Court construes it as one brought under both Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### A. Rule 12(b)(1)

In general, when evaluating a motion to dismiss under Rule 12(b)(1), the Court must determine whether the facts as alleged in the complaint, "taken at face value," support subject-matter jurisdiction. Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017). When undertaking this evaluation, courts "apply the same plausibility standard used to evaluate a motion under Rule 12(b)(6)." Gustavsen v. Alcon Lab'ys, Inc., 903 F.3d 1, 7 (1st Cir. 2018) (citing Hochendoner v. Genzyme Corp., 823 F.3d 724, 731 (1st Cir. 2016)). The Court must therefore "accept the factual averments of the complaint as true, and construe those facts in the light most congenial to the [Plaintiff's] cause." Royal v. Leading Edge Prods., Inc., 833 F.2d 1, 1 (1st Cir. 1987) (first citing Guessfeldt v. McGrath, 342 U.S. 308, 310 (1952); and then citing Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987)).

### B. Rule 12(b)(6)

In a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pled facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in the plaintiff's favor. See Gilbert v. City of Chicopee, 915 F.3d 74, 80 (1st

Cir. 2019) (first citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011); and then citing Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009)). "[A] complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Pitta v. Medeiros, 90 F.4th 11, 17 (1st Cir. 2024) (quoting Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008)). Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

## III. DISCUSSION

Defendants raise five arguments for dismissal, two of which are jurisdictional and three of which go to the merits of Plaintiff's claims. The Court will begin by considering Defendants' jurisdictional arguments, then turn to those involving the merits.

### A. Jurisdiction

Defendants argue that this Court lacks jurisdiction to entertain Plaintiff's claims because: (1) his claims fall within a category of claims over which Congress has deprived federal courts of jurisdiction, as they "aris[e] from or relat[e] to the implementation or operation of an order of [expedited] removal," 8 U.S.C. § 1252(a)(2); and (2) he lacks standing because there is no relief this Court can provide to redress his alleged injuries.

**1. Jurisdictional Bar**

In 8 U.S.C § 1252 ("§ 1252"), Congress provided that, apart from a limited class of habeas petitions, federal courts do not have jurisdiction over any "cause or claim arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1) of this title." The referenced provision, 8 U.S.C § 1225(b)(1), concerns expedited removal proceedings and authorizes immigration officers to bypass the ordinary removal procedures involving a hearing before an immigration judge in certain circumstances. In other words, § 1252 provides that when the executive branch decides an alien is subject to expedited removal—and issues an order to that effect—federal courts generally do not have jurisdiction over claims relating to the "implementation or operation" of that order.

Defendants argue that this provision applies to bar jurisdiction over Plaintiff's claims because they are, in effect, challenges to an order of expedited removal. [ECF No. 11 at 7]. They further argue that Plaintiff's challenge to "USCIS's reliance on the expedited removal order as grounds for dismissing his asylum application" is merely a disguised challenge to an expedited removal order, as his claims "are dependent upon a determination whether he is in expedited removal." [Id. at 9]. Plaintiff counters that he is not seeking review of an order of expedited removal in the way that § 1252 prohibits, but rather "challenging USCIS's dismissal of his asylum application as arbitrary and capricious because the agency failed to provide a sufficient explanation for its harmful action, and the assertion that an expedited order currently exists is baseless." [ECF No. 12 at 5–6]. Plaintiff further argues that the jurisdictional bar does not apply because he "does not challenge the expedited removal order itself, but rather USCIS's independent dismissal of his asylum application." [Id. at 6].

Both parties point the Court to cases that bear similarities to the instant case. Defendants direct the Court to Martinez v. Garland, 20-cv-00977, 2021 WL 4060434 (D. Md. Sept. 7, 2021), Arora v. United States Dep't of Homeland Sec., 25-cv-07064, 2025 WL 3641586 (N.D. Cal. Dec. 16, 2025), and Singh v. United States Dep't of Homeland Sec. (Taranpreet Singh), 25-cv-08180, 2025 WL 3241157 (N.D. Cal. Nov. 20, 2025). In Martinez, the plaintiff challenged the denial of an immigration visa which the government premised upon the plaintiff's pending expedited removal order. 2021 WL 4060434, at *2. The plaintiff asserted that the pending expedited removal order was "invalid" because it had not been properly served or executed as required by regulation, and that it therefore it could not serve as the basis for denying her immigration visa. Id. at *2, *4. The plaintiff argued that she did "not seek judicial review of a final order of removal" but rather that she solely challenged the separate visa denial premised on that order, and the court rejected that logic, finding that "her claims [were] 'nothing more than indirect attacks' on the 2004 expedited removal order." Id. at *4.

Likewise, in both Arora and Taranpreet Singh, the plaintiffs contended that their respective orders of expedited removal were invalid because they did not adhere to the proper procedural standards for issuing and executing a Form I-860, and that USCIS's denials of their asylum applications on the basis of those orders were therefore improper. 2025 WL 3641586, at *1; 2025 WL 3241157, at *3. As in Martinez, the courts in Arora and Taranpreet Singh rejected both claims, finding that they amounted to indirect attempts to challenge the "implementation or operation" of orders of expedited removal in violation of § 1252. 2025 WL 3641586, at *1; 2025 WL 3241157, at *4.

Plaintiff directs the Court to Garcha v. United States Dep't of Homeland Sec., 25-cv-07215, 2026 WL 747457 (N.D. Cal. Mar. 17, 2026). Upon its own review of the case law, the

Court further notes that Singh v. United States Dep't of Homeland Sec. (Kiratpal Singh), 25-cv-04899, 2026 WL 323329 (N.D. Cal. Feb. 6, 2026), involved similar facts and accords with Garcha.[4] Both Garcha and Kiratpal Singh involved challenges to the dismissal of affirmative asylum applications which the government premised upon the plaintiffs' purportedly pending expedited removal orders—the precise action Plaintiff challenges. 2026 WL 747457, at *2; 2026 WL 323329, at *2.

Unlike in the government's cases, the plaintiffs in Garcha and Kiratpal Singh did not challenge the dismissals of their affirmative asylum applications based on supposed defects in their expedited removal orders. 2026 WL 747457, at *2, 8–9; 2026 WL 323329, at *4. Instead, those plaintiffs challenged as arbitrary and capricious the government's "shifting sands approach to [their] removal proceedings—originally placing [them] in expedited removal, then abandoning that decision to place [them] in regular removal, then changing course to renounce their previous decision to place [them] in regular removal." 2026 WL 747457, at *8; 2026 WL 323329, at *5. The crux of the claims in Garcha and Kiratpal Singh was not that the government had invalidly or improperly placed the plaintiff in expedited removal proceedings, but rather that the government had affirmatively abandoned expedited removal proceedings, and that its unexplained reversal years later was arbitrary. Under those circumstances, the courts in Garcha and Kiratpal Singh found that § 1252's jurisdictional bar did not apply because the plaintiffs were not contesting the validity of an expedited removal order. 2026 WL 747457, at *9; 2026 WL 323329, at *5.

---

[4] Plaintiff also directs the Court's attention to E-C-R- v. Noem, 2026 WL 821799 (D. Or. Mar. 25, 2026). [ECF No. 12 at 11]. However, the court in E-C-R did not face or consider the arguments Defendants raise under 8 U.S.C § 1252(a)(2), so the Court does not find E-C-R instructive as to this issue.

The Court finds that Garcha and Kiratpal Singh are more analogous to the present situation than the cases cited by the government. Plaintiff is not challenging USCIS's dismissal of his asylum application on the basis that the underlying expedited removal order was defective, as in government's cases. Rather, like the plaintiffs in both Garcha and Kiratpal Singh, Plaintiff contends that, upon his release from custody, he was "placed in removal proceedings" and was never issued an order of expedited removal; that the government's subsequent actions were "legally incompatible with expedited removal and constitute an abandonment or termination of that course of action"; and that the government "cannot now reverse course without explanation or cause." [ECF No. 12 at 8–10]. Exercising jurisdiction over this case will not require the Court to adjudicate the validity or effect of an order of expedited removal under the governing statutes or regulations. Rather, the Court will have to determine only whether the government's prior course of conduct renders USCIS's dismissal of Plaintiff's asylum application based on the purported existence of such an order arbitrary. Under these circumstances, the Court concludes, like the courts in Garcha and Kiratpal Singh, that § 1252's jurisdictional bar—which prohibits claims challenging the "implementation or operation" of an expedited removal order—does not clearly apply.

The Supreme Court has held that "[w]hen a statute is 'reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'" Kucana v. Holder, 558 U.S. 233, 251 (2010) (quoting Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 434 (1995)). That Court has "consistently applied that interpretive guide to legislation regarding immigration, and particularly to questions concerning the preservation of federal-court jurisdiction." Id. (applying presumption to § 1252). Here, the question of whether § 1252

applies to Plaintiff's claims is at the very least "reasonably susceptible to divergent interpretation." Id. Therefore, given the absence of "clear and convincing evidence" that Congress intended § 1252 to deprive federal courts of jurisdiction over claims like Plaintiff's, the Court finds that the jurisdictional bar does not apply here. Id. at 252.

**2. Standing**

To invoke federal court jurisdiction, a plaintiff must satisfy Article III's standing requirement, which requires him or her to show "three elements: injury in fact, causation, and redressability." Diamond Alternative Energy, LLC v. Env't Prot. Agency, 606 U.S. 100, 111 (2025) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). To satisfy the injury in fact element, the plaintiff must show an injury that is "concrete," "particularized," and "actual or imminent, not speculative." Food & Drug Admin. v. All. for Hippocratic Med., 602 U.S. 367, 381 (2024). The redressability requirement asks whether the plaintiff's "injury likely would be redressed by the requested judicial relief." Id. at 368. "To determine whether an injury is redressable, [courts] consider the relationship between the judicial relief requested and the injury suffered." Murthy v. Missouri, 603 U.S. 43, 73 (2024) (internal quotations omitted) (citing California v. Texas, 593 U.S. 659, 671 (2021)). "Redressability is a matter of degree. To satisfy this requirement, the plaintiff 'need not definitively demonstrate that a victory would completely remedy the harm.'" Katz v. Pershing, LLC, 672 F.3d 64, 72 (1st Cir. 2012) (quoting Antilles Cement Corp. v. Fortuño, 670 F.3d 310, 318 (1st Cir.2012)).

The government's standing argument focuses on the redressability element. According to the government, "there is no remedy that the Court can provide [Plaintiff] as to the dismissal of his asylum application" because, if Plaintiff is not subject to expedited removal proceedings, then he "would have to be in [regular] removal proceedings under § 1229a," in which case

USCIS would lack jurisdiction over his asylum application for independent reasons. [ECF No. 11 at 13–14]. Plaintiff disputes the government's assertion that USCIS would independently lack jurisdiction over his application if the Court were to find that he is not subject to expedited removal proceedings. [ECF No. 12 at 18–19].

Defendants' argument misconstrues Plaintiff's request and the effect of a decision in Plaintiff's favor. Plaintiff is asking for a court order directing Defendants to reinstate his asylum application with USCIS. [Compl. at 5]. Although a future decision by the government to place Plaintiff in normal removal proceedings under 8 U.S.C § 1229a would divest USCIS's jurisdiction over his asylum claim and transfer it to an immigration judge, such divestiture would not automatically follow from a grant of the relief sought by Plaintiff. Immigration judges obtain exclusive jurisdiction over asylum applications only after the government formally initiates regular removal proceedings, typically by filing a Notice to Appear with the immigration court. See 8 C.F.R. § 208.2(b). Plaintiff alleges that "A Notice to Appear was never filed with the Immigration Court" before he filed his affirmative asylum application with USCIS in 2023, and none of his allegations or the documents incorporated therein indicate that such a Notice has been filed since. [Compl. ¶ 8]. Accordingly, the record before the Court provides no support for Defendants' argument that USCIS would independently lack jurisdiction over Plaintiff's asylum application if he were not subject to expedited removal proceedings.

Moreover, even if the government had filed a Notice to Appear independently depriving USCIS of jurisdiction over Plaintiff's asylum application, that would not make his injuries fully non-redressable, as would be necessary to deprive this Court of jurisdiction over Plaintiff's claims. While the pendency of regular removal proceedings would preclude the full relief Plaintiff requests, a plaintiff "need not demonstrate that its entire injury will be redressed by a

favorable judgment," so long as "the court can fashion a remedy that will at least lessen its injury." Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc., 958 F.3d 38, 49 (1st Cir. 2020) (citing Antilles Cement Corp., 670 F.3d at 318). Here, an order finding that USCIS's dismissal was unlawfully premised on nonexistent or abandoned expedited removal proceedings would lessen Plaintiff's alleged injuries even if USCIS could not ultimately adjudicate his application. Such an order would have the effect of ensuring that Plaintiff's asylum application proceeds through the normal process of adjudication in immigration court, rather than through the less favorable processes applicable in expedited removal proceedings. Practically, this outcome would lessen the procedural hurdles Plaintiff must overcome to obtain asylum, compare 8 U.S.C § 1225(b) with 8 U.S.C § 1229a, exempt him from mandatory detention, 8 U.S.C. § 1225(b)(1)(B), and allow him to retain his existing employment authorization, 8 C.F.R. § 208.7, thereby redressing many of the key harms for which Plaintiff seeks relief. [Compl. ¶ 12]; [ECF No. 12 at 13, 16]. Accordingly, the Court finds that, at the pleading stage, Plaintiff has satisfied the requirements of standing.

**B. Merits**

Defendants further raise several arguments that go to the merits of Plaintiff's claims. They argue: (1) that the challenged dismissal is not reviewable under the APA because it is not "final agency action,"; (2) that Plaintiff fails to plausibly allege that USCIS's dismissal was arbitrary and capricious under the APA; and (3) that Plaintiff fails to state a due process claim because he has no constitutional right to asylum.

### 1. Final Agency Action[5]

Under the APA, courts may typically only review "final agency action." 5 U.S.C. § 704. An agency action is final if two conditions are met: first, the action must "mark the consummation of the agency's decisionmaking process" and not be "of a merely tentative or interlocutory nature"; and second, it must be "one by which rights or obligations have been determined, or from which legal consequences will flow." Harper v. Werfel, 118 F.4th 100, 117 (1st Cir. 2024) (internal quotation marks omitted) (quoting Bennett v. Spear, 520 U.S. 154, 178 (1997)). The "most important factor is the actual legal effect (or lack thereof) of the agency action . . . on regulated entities." Massachusetts v. Trump, 790 F. Supp. 3d 8, 27 (D. Mass. 2025) (internal quotation marks omitted) (citing Nat'l Educ. Ass'n v. U.S. Dep't of Educ., 779 F.Supp.3d 149, 184 (D.N.H. 2025)).

Defendants argue that USCIS's dismissal is not a final agency action because a denial of an affirmative asylum application is generally subject to further review within the executive branch before it has a concrete effect and is therefore "not the consummation of the decision-making process." [ECF No. 11 at 11]. In support, Defendants cite Dhakal v. Sessions, 895 F.3d 532 (7th Cir. 2018), in which the Seventh Circuit held that an initial denial of an affirmative asylum application by USCIS is "more like a tentative recommendation than a final and binding determination." Id. at 540 (quoting Franklin v. Massachusetts, 505 U.S. 788, 798 (1992)); see [ECF No. 11 at 11]. In response, Plaintiff argues that USCIS's dismissal in this case is a final

---

[5] Although Defendants frame this argument as going to the Court's jurisdiction, the First Circuit has held that "the APA's finality requirement is not jurisdictional in nature." Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 33 (1st Cir. 2007) (citing R.I. Dep't of Envtl. Mgmt. v. United States, 304 F.3d 31, 40 (1st Cir.2002)). Accordingly, the Court considers this argument alongside Defendants' other merits arguments.

agency action because "[t]here is no alternative avenue to challenge the dismissal of his previously pending asylum application," and because the dismissal carries legal consequences, including the risk of mandatory detention. [ECF No. 12 at 13–14]. Plaintiff argues that Dhakal is unavailing because "a denial is distinct from a dismissal under the governing statutes and regulations, as a dismissal leaves an applicant with no further recourse to protest the dismissal itself." [Id. at 14].

The Court notes that this dispute closely mirrors an issue addressed in Kiratpal Singh and Garcha. 2026 WL 323329, at *6; 2026 WL 747457, at *10. In both cases, as here, USCIS issued a dismissal of the plaintiff's affirmative asylum application based on supposedly pending expedited removal proceedings, and the government argued that USCIS's dismissal was not a final agency action. Kiratpal Singh, 2026 WL 323329, at *6; Garcha, 2026 WL 747457, at *10. Both courts rejected that argument. Kiratpal Singh, 2026 WL 323329, at *6; Garcha, 2026 WL 747457, at *10. As the court noted in Kiratpal Singh, a dismissal like the one in this case is in "a different posture than those in [cases in] which USCIS has denied an application for asylum following review," because, "[t]here appears to be no right to appeal or opportunity for a reasoned decision here" prior to a change in legal status. 2026 WL 323329, at *6; see also Garcha, 2026 WL 747457, at *10 ("[B]ecause USCIS's dismissal is not subject to review, it is not tentative or interlocutory—the dismissal thus marks the end of USCIS's decision-making process.").

The Court agrees with the reasoning in Kiratpal Singh and Garcha. Normally, when USCIS chooses not to grant an asylum application, that decision triggers a process whereby the applicant is entitled to de novo review of the asylum claim by the immigration judge overseeing his or her normal removal proceedings before any change in his or her legal status occurs. See 8

C.F.R. § 208.14(c). That is not the case, however, when the denial is based on a determination that the applicant is in expedited removal proceedings, as such a determination has an immediate effect on an applicant's legal rights, including subjecting him to mandatory detention. See 8 C.F.R. § 235.3(b)(2)(iii). Accordingly, the Court finds that the dismissal of Plaintiff's affirmative asylum application under the circumstances alleged constituted "the consummation of the agency's decisionmaking process," and a decision "from which legal consequences will flow," rendering it a final agency action subject to judicial review. Harper, 118 F.4th at 117.

**2. Arbitrary and Capricious**

"An agency action qualifies as 'arbitrary' or 'capricious' if it is not 'reasonable and reasonably explained.'" Ohio v. Env't Prot. Agency, 603 U.S. 279, 292 (2024) (quoting FCC v. Prometheus Radio Project, 592 U.S. 414, 423 (2021)). "In reviewing an agency's action under that standard, a court may not 'substitute its judgment for that of the agency.'" Id. (quoting FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009)). "But it must ensure, among other things, that the agency has offered 'a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made.'" Id. (quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)); see also Penobscot Air Servs., Ltd. v. FAA, 164 F.3d 713, 719 (1st Cir. 1999) ("The task of a court reviewing agency action under the APA's 'arbitrary and capricious' standard is to determine whether the agency has examined the pertinent evidence, considered the relevant factors, and 'articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" (quoting State Farm, 463 U.S. at 43)). "While this is a highly deferential standard of review, it is not a rubber stamp." Penobscot Air Servs., 164 F.3d at 720 (quoting Dubois v. U.S. Dep't of Agric., 102 F.3d 1273, 1285 (1st Cir. 1996)).

Defendants argue that Plaintiff has failed to plausibly allege arbitrary and capricious agency action because USCIS was justified in dismissing Plaintiff's asylum application, as Plaintiff is properly in expedited removal pursuant to 8 U.S.C § 1225(b)(1). [ECF No. 11 at 16–17]. Defendants argue that "Plaintiff has identified no authority to permit USCIS to ignore, overrule, or negate CBP's issuance of the Form I-860, Notice and Order of Expedited Removal." [Id. at 17]. Plaintiff counters that Defendants' argument "mischaracterizes Plaintiff's factual allegations." [ECF No. 12 at 15]. He contends that his claim is based on the contradiction between the government's past action (e.g., releasing plaintiff on his own recognizance, accepting his asylum application, approving his work permit) and the government's current position that he is in expedited removal proceedings, as well as the government's lack of a reasoned explanation for that reversal. [Id. at 15–16].

At the pleading stage, the Court concludes that Plaintiff has plausibly alleged that the government's action was arbitrary and capricious under the APA. The Court agrees with Plaintiff that Defendants' arguments misconstrue the basis for his claims; Plaintiff is not claiming that the government lacks authority under the governing statutes to subject him to expedited removal proceedings or that USCIS should ignore a legitimate expedited removal order. Rather, he challenges what he alleges to be the lack of a reasoned basis for the government to reverse a yearslong course of conduct on which he had reasonably come to rely. [ECF No. 12 at 16].

It is well established that a reversal by the government of a prior position without an adequate explanation that considers alternatives and reliance interests can be arbitrary and capricious. See Housatonic River Initiative v. United States Env't Prot. Agency, New England Region, 75 F.4th 248, 270 (1st Cir. 2023) (explaining that an agency changing position must

"provide[] a reasoned explanation for the change," including by "display[ing] awareness that it is changing position" and "consider[ing] the 'alternative[s]' that are 'within the ambit of the existing [position].'"); Affirmed Energy, LLC v. FERC, 166 F.4th 1070, 1088 (D.C. Cir. 2026) (explaining that an agency changing position "must be 'cognizant' of the reliance interests its decision might upset and 'explain[ ] its good reasons' for moving forward anyway."). This remains true even when the agency contends that its reversal is required by law. See Dep't of Homeland Sec. v. Regents of the Univ. of California, 591 U.S. 1, 25, 33 (2020) ("[N]othing about th[e] determination [of illegality] foreclosed or even addressed the options of . . . accommodating particular reliance interests. . . . That failure was arbitrary and capricious in violation of the APA.").

Plaintiff plausibly states a challenge based on these principles. He alleges that the government released him on his own recognizance after he entered the country and informed him that it was doing so pursuant to its authority under 8 U.S. Code Section 1226—a statutory provision inapplicable to individuals in expedited removal proceedings. [ECF No. 4–1 at 1]; J.U. v. Maldonado, 805 F. Supp. 3d 482, 490 (E.D.N.Y. 2025) ("[T]he two provisions are exclusive; a noncitizen can only be subject to § 1225 or § 1226, not both."). He alleges that he was never given a Form I-860, Notice and Order of Expedited Removal, [Compl. ¶ 10], and that, over the three years following his entrance into the United States, the government took several actions inconsistent with the existence of expedited removal proceedings, including accepting his affirmative asylum application, [id. ¶ 18]. Then, he alleges, USCIS suddenly changed its mind by taking the position that Plaintiff was, in fact, in expedited removal proceedings and therefore

ineligible to apply for asylum with USCIS, and provided virtually no justification for the reversal. [Id. ¶ 9]; [ECF No. 12-6 (Notice of Dismissal)].[6]

Other courts reviewing challenges to similar agency action have found them to state plausible claims for arbitrary and capricious action. In Garcha, the court declined to dismiss an APA claim based on an identical reversal, finding it "plausible that DHS exercised its discretion to refer [plaintiff] for regular removal" and that the government's "fail[ure] to display awareness of its changing position in reversing [plaintiff's] status in regular removal" was arbitrary and capricious. 2026 WL 747457, at *12–13. Likewise, in Kiratpal Singh, the court found that the following alleged facts, taken together, were sufficient to state an APA claim: (1) "the government's repeated decisions to release [plaintiff] and keep him from detention," (2) "USCIS's acceptance of his asylum application and issuance of an [Employment Authorization Document]," and (3) "USCIS's sudden and unexplained dismissal of [plaintiff's] asylum application." 2026 WL 323329, at *7. Given this supporting authority, and the well-established principles of agency review invoked by Plaintiff, the Court finds it plausible that the actions alleged by Plaintiff were arbitrary and capricious, and accordingly declines to dismiss Plaintiff's APA claim.

**3. Due Process**

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "In its procedural aspect, due process ensures that government, when dealing with private persons, will use fair procedures."

---

[6] Although Plaintiff did not attach USCIS's Notice of Dismissal to his complaint, he incorporates it by reference, [Compl. ¶ 9]. The Court will therefore consider the Notice which is referenced by both parties. Hewes v. Pangburn, 162 F.4th 177, 191 n.8 (1st Cir. 2025).

DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005). "To establish a procedural due process violation, the plaintiff 'must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [him] of that interest without constitutionally adequate process.'" Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 13 (1st Cir. 2011) (quoting Aponte–Torres v. Univ. of P.R., 445 F.3d 50, 56 (1st Cir. 2006)). To determine whether constitutionally adequate process has occurred, courts look to "a myriad of factors, including the private and public interests involved, the risk of an erroneous deprivation inherent in the procedures employed by the state, and the likely benefit that might accrue from additional procedural protections." Id. (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)).

Though they conflate them, Defendants appear to raise two distinct arguments against Plaintiff's due process claim. First, they assert that Plaintiff is a person "seeking initial admission to the United States" and therefore is not entitled to any due process protections at all concerning his admission or removal. [ECF No. 11 at 12]. Second, they appear to argue that an individual's interest in obtaining asylum is not the type of protected liberty or property interest to which the Due Process Clause applies. [Id.]. In response, Plaintiff argues that the Due Process Clause does apply to his asylum application because (1) the Due Process Clause protects noncitizens present in the United States, even those here illegally, and (2) federal law provides a statutory right to apply for asylum, making it a protectable interest subject to the Due Process Clause. [ECF No. 12 at 16–17].

Regarding Plaintiff's right to due process in general, Defendants are correct that "an alien at the threshold of initial entry" lacks due process rights concerning his or her admission or removal; that principle, however, does not apply to "aliens who have established connections in this country." Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 107 (2020). "Once an

alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Here, Plaintiff alleges that he has been present in the country for nearly four years, that he has lived freely in the United States "on his own recognizance" since shortly after he entered, and that he currently "resides within the District of Massachusetts." [Compl. ¶¶ 2, 7]. He is therefore not the type of non-citizen to whom Thuraissigiam's entry fiction traditionally applies.

The Court notes, however, that courts in this District have reached differing conclusions on whether Thuraissigiam's rule for "alien[s] at the threshold of initial entry" continues to apply to non-citizens who are detained at the border and subsequently released on parole. Compare Rincon v. Hyde, 810 F. Supp. 3d 101, 112–13 (D. Mass. 2025), with Banegas v. McDonald, No. 25-cv-13161, 2025 WL 3251395, at *3 (D. Mass. Nov. 21, 2025). At least in the case of an individual like Plaintiff—who alleges that the government affirmatively abandoned any pursuit of expedited removal and has treated him as an individual subject to normal removal proceedings—this Court agrees with the majority of courts in this District which have held that "[t]he act of parole extinguishe[s] the legal fiction that a non-citizen who is physically present in the United States has, in fact, not effected an entry into the United States." De Andrade v. Moniz, 802 F. Supp. 3d 325, 332 (D. Mass. 2025). Therefore, at the pleading stage, the Court finds that it is at least plausible that Plaintiff is not an "alien at the threshold of initial entry," Thuraissigiam, 591 U.S. at 107, and that the Due Process Clause therefore applies to him.

Regarding whether Plaintiff has a protectable liberty or property interest in seeking asylum, the First Circuit has long held that an alien seeking asylum "'is entitled to a fair hearing,' although 'not necessarily a perfect one,' and thus can succeed on a due process claim if

the due process violation caused prejudice.'" Jani v. Garland, 110 F.4th 30, 39 (1st Cir. 2024) (citing Santosa v. Mukasey, 528 F.3d 88, 93–94 (1st Cir. 2008)). In other words, "an alien who has unlawfully entered the United States has a Fifth Amendment procedural due process right to petition the government for political asylum," even though "[t]here is no constitutional right to political asylum itself." Maldonado-Perez v. I.N.S., 865 F.2d 328, 332 (D.C. Cir. 1989)). The Court therefore rejects Defendants' argument that the asylum process is not protected by the Due Process Clause and will decline to dismiss Plaintiff's procedural due process claim at this stage.[7]

To the extent Plaintiff raises a substantive due process claim, however, the Court will dismiss it. As Defendants note, there is "no constitutional right to political asylum itself." [ECF No. 11 at 12 (citing Arabzada v. Donis, 725 F. Supp. 3d 1, 19 (D.D.C. 2024)). Plaintiff does not appear to dispute this proposition in his brief or otherwise raise any arguments in support of a substantive due process claim. [ECF No. 12 at 16–17]. Accordingly, while Plaintiff is entitled to a fair and adequate adjudication process, the Court finds that the Due Process Clause entitles him to no more with respect to his asylum application.

---

[7] In declining to dismiss Plaintiff's procedural due process claim, the Court does not address the claim's requirements other than the threshold applicability issues raised by Defendants. Thus, for example, the Court expresses no opinion on whether Plaintiff has shown that the process provided by the government was inadequate or whether the denial of Plaintiff's affirmative asylum application constituted a deprivation. To the extent Defendants intended to raise any of these issues in their motion, they were not adequately briefed. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.").

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, [ECF No. 10], is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion is granted with respect to the substantive due process claim asserted in Count I and denied in all other respects.

**SO ORDERED.**

November 10, 2026

*/s/ Allison D. Burroughs*
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE